UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION
CIVIL ACTION NO.: _____

| | |
|---|---|
| THE CINCINNATI SPECIALTY UNDERWRITERS INSURANCE COMPANY,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>STUDY HALL, LLC and PAMELA K. LEE, AS PERSONAL REPRESENTATIVE FOR THE ESTATE OF COLIN KIRSCH ROBERTS,<br><br>　　　　Defendants. | **COMPLAINT**<br><br>**(Jury Trial Demanded)** |

Plaintiff, The Cincinnati Specialty Underwriters Insurance Company ("Cincinnati"), by and through its undersigned counsel, and pursuant to Fed. R. Civ. P. 57, 28 U.S.C. §§ 2201(a) and 2202, and all other applicable law, files this Complaint for Declaratory Relief against Defendants, Study Hall, LLC ("Study Hall") and Pamela K. Lee, as the Personal Representative for the Estate of Colin Kirsch Roberts, ("Claimant") (collectively, "Defendants"), alleging as follows:

## THE PARTIES AND NATURE OF THE DISPUTE

1.　　This is an action for declaratory relief pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. §§ 2201 and 2202, and all other applicable law, to determine the Parties' rights, duties, obligations, and entitlements pursuant to a policy of insurance, bearing policy number CSU0143073, which was effective November 22, 2020 through November 22, 2021 ("Policy"). *See **Exhibit A**, Policy.*

2.　　Cincinnati is a corporation organized under the laws of the State of Ohio.

1

Cincinnati maintains its principal place of business in Fairfield, Ohio.

3.     At all times relevant, Cincinnati was and is authorized to transact business in the State of South Carolina. Cincinnati submits itself to the jurisdiction and venue of this Court for purposes of this case only.

4.     Defendant Study Hall is a limited liability company organized under the laws of the State of South Carolina. Study Hall maintains its principal place of business in North Charleston, South Carolina. Upon information and belief, Study Hall has one member: Jonathan Starkey. Mr. Starkey is a citizen of and domiciled in South Carolina and comprises the member(s) of Study Hall, such that Study Hall is a citizen of South Carolina. Therefore, Study Hall is not a citizen of Ohio; is a citizen of South Carolina; and is diverse from Cincinnati.

5.     Upon information and belief, Defendant Pamela K. Lee is a citizen and resident of Greenville County, South Carolina.

**JURISDICTION, VENUE, AND APPLICABLE LAW**

6.     Cincinnati incorporates the allegations of Paragraphs 1 through 5, above, as if fully set forth herein.

7.     This Honorable Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 1332(a)(1) and 2202, and Fed. R. Civ. P. 57. Complete diversity exists between the Parties, as set forth above. Additionally, the amount in controversy exceeds seventy-five thousand dollars ($75,000.00), exclusive of interest and costs. Further, this Court has jurisdiction under 28 U.S.C. §§ 2201(a) and 2202 because Cincinnati seeks declaratory relief concerning an actual controversy within this Court's jurisdiction.

8.     Venue is proper in the District of South Carolina pursuant to 28 U.S.C. §

2

1391(b) because it is the district and division embracing the place where a substantial part of the events or omissions giving rise to this Action occurred.

9.     The Policy that is the subject of this Action was delivered to Study Hall in South Carolina. The events relating to the insurance claim and Policy at issue occurred in South Carolina. The Policy insures interests located in Pickens County, South Carolina.

10.     South Carolina law applies to the adjudication of this Action and the Policy.

## **THE CIVIL ACTION AND THE CLAIM**

11.     Cincinnati incorporates the allegations of Paragraphs 1 through 10, above, as if fully set forth herein.

12.     On or about January 2, 2024, Colin Kirsch Roberts commenced a legal action regarding injuries allegedly arising out of an incident that occurred while he was a patron of Study Hall, a bar located at 101 College Avenue in Clemson, South Carolina. The legal action, styled *Colin Kirsch Roberts v. Study Hall, LLC and John Doe* was assigned civil action number 2023-CP-39-00004 and is currently pending in the Court of Common Pleas of Pickens County, South Carolina (the "Underlying Action"). *See **Exhibit B, Underlying Complaint***.[1]

13.     The Underlying Complaint alleges that, on or about November 13, 2021, Mr. Roberts was a patron of Study Hall, where he became intoxicated after being served alcoholic beverages. *See Ex. B, Underlying Compl., ¶¶ 8-9*.

14.     According to Mr. Roberts, he was on the second story of Study Hall when a bouncer, allegedly employed by Study Hall, approached Mr. Roberts and claimed that he

---

[1] Mr. Roberts has since passed away due to causes unrelated to the subject incident. On June 10, 2024, counsel for Mr. Roberts filed a Motion to Substitute the Plaintiff from Mr. Roberts to his mother, the Personal Representative of his Estate, Ms. Pamela K. Lee.

3

was acting belligerent. *Id.*, ¶ 10.

15.     Mr. Roberts alleges that the bouncer, while acting within the scope of his employment with Study Hall, suddenly, unjustifiably, and forcefully threw him down the stairs and caused certain injuries (the "Loss Event"). *Id., ¶ 11*.

16.     These alleged injuries include, but are not necessarily limited to, serious and permanent bodily injuries, including physical pain; suffering; mental anguish; emotional distress; medical expenses; and lost wages, among others. *See e.g. id., ¶¶ 11, 16, and 21*.

17.     In the Underlying Action, Mr. Roberts has alleged that Study Hall was negligent in its failure to, among other things, establish or enforce policies for handling altercations, fights, or aggressive behavior and to adequately hire, train, and supervise its employees, including bouncers and security personnel. *Id., ¶¶ 14, 20.*

18.     On or about January 30, 2024, through its registered agent, Study Hall received service of the Underlying Complaint. *See **Exhibit C**, Affidavit of Service*.

19.     On or about June 18, 2024, Plaintiff filed an Affidavit of Default and Motion for Entry of Default as to Study Hall. *See **Exhibits D and E**, Affidavit of Default and Motion for Entry of Default, respectively*.

20.     The Court entered default as to Study Hall on August 30, 2024. *See **Exhibit F**, Entry of Default*.[2]

21.     On November 13, 2024, Plaintiff filed a Notice of Hearing and Affidavit of Service. Enclosed with the Affidavit of Service was a November 7, 2024 letter from

---

[2] This is not the first instance where Study Hall has failed to notify Cincinnati of a civil suit asserted against it. In *Cameron Maleki v. Study Hall, LLC*, civil action no. 2023-CP-39-00906, the Court of Common Pleas of Pickens County, S.C. issued an order finding Study Hall in default for not responding to a legal complaint.

Plaintiff's counsel, Mr. Kyle Brady, that notified Study Hall of the hearing on Plaintiff's Entry of Default. The hearing was scheduled for November 22, 2024 via WebEx. *See* **Exhibit G**, *Notice of Hearing*.

22.     On or about November 21, 2024, Cincinnati received a telephone call from Plaintiff's counsel, Mr. Brady, during which he notified Cincinnati of the Underlying Action. Mr. Brady advised that Study Hall was in default; that a damages hearing was scheduled for the next day, November 22, 2024; and that he wished to speak with someone from Cincinnati prior to the November 22 hearing.

23.     Mr. Brady's telephone call to Cincinnati was Cincinnati's first notice of the Underlying Action.

24.     That same day, Mr. Peter Kuzma, Claims Analyst with Cincinnati, telephoned Mr. Brady. During that call, Mr. Brady advised that he would provide Mr. Kuzma a copy of the Underlying Complaint and file a Motion to Continue the damages hearing, which he did. *See* **Exhibit H**, *Kuzma and Brady emails d. Nov. 21, 2024*.

25.     On December 4, 2024, while Cincinnati's investigation was ongoing, Mr. Brady emailed Mr. Kuzma, stating the following:

> To the extent that there is coverage for Study Hall, LLC under the Cincinnati policy, we are willing to let Study Hall, LLC out of default so long as Study Hall properly files an answer no later than December 13, 2024, at 5pm. Please me know if you have any questions.
>
> *See* **Exhibit I**, *Kuzma and Brady emails Dec. 2024, p. 2.*

26.     Neither Mr. Brady's email nor any other communication from Mr. Brady defined what "coverage … under the Cincinnati policy" meant.

27.     Further, the Policy – even if Study Hall had not defaulted – provided, at best, only certain limited coverage relative to the Loss Event. *See infra paras. 36-48.*

5

28. On December 13, 2024, prior to 5pm, Mr. Kuzma emailed Mr. Brady and requested a time to discuss the Claim. Mr. Brady did not respond to Mr. Kuzma until December 16, 2024. Mr. Kuzma and Mr. Brady scheduled a call to discuss the Claim for December 18, 2024. *See Ex. I, pp. 1-2.*

29. During the telephone call on December 18, 2024, Mr. Kuzma notified Mr. Brady that he was unable to access the documents provided by Mr. Brady's office, which Cincinnati requested as part of its investigation. Mr. Brady, though, refused to extend the deadline for Study Hall to file an answer to the Complaint.

30. On December 18, 2024, Cincinnati retained counsel to defend Study Hall, subject to Cincinnati's complete reservation of right, and said counsel, on December 18, 2024, filed a Motion for Relief from Entry of Default and Leave to File a Responsive Pleading. *See **Exhibit J**, Motion for Relief from Entry of Default*.

31. Cincinnati's Reservation of Rights Correspondence stated that although Cincinnati would defend Study Hall, pursuant to its complete reservation of rights under the Policy, coverage may be limited or precluded due to the application of certain Policy provisions, including but not limited to, the Policy's Duties In The Event Of Occurrence, Offense, Claim Or Suit, among others. *See **Exhibit K**, Reservation of Rights Letter d. Dec. 20, 2024.*[3]

32. The hearing regarding Study Hall's Motion for Relief from Entry of Default took place on October 8, 2025.

33. On October 20, 2025, Cincinnati learned, for the first time, that counsel for

---

[3] In commencing the instant Declaratory Judgment Action, Cincinnati does not waive the ability to rely on the provisions and exclusions in the Policy, including, but not limited to, the Punitive Damages Exclusion. *See Ex. A, Policy, Form CSGA 401 02 13, p. 39, as modified by Form CSGA 203 10 18, p. 56.*

Plaintiff and Study Hall prepared a proposed order purporting to reflect the Court's ruling on Study Hall's Motion for Relief (the "Proposed Order"). The Proposed Order contained multiple misrepresentations of fact relative to Cincinnati and improperly attempted to inject insurance coverage issues into the Underlying Action.

34.     Without permitting Cincinnati any meaningful opportunity to comment on the Order, the Parties submitted the Proposed Order to the Court on October 20, 2025. The Court entered the Proposed Order on October 28, 2025. *See **Exhibit L**, Order Denying Study Hall's Motion for Relief d. Oct. 28, 2025*.

35.     At present, hearing on Plaintiff's Motion for Damages is scheduled for August 10, 2026.

## THE POLICY

36.     Cincinnati incorporates the allegations of Paragraphs 1 through 35, above, as if fully set forth herein.

37.     The Policy affords certain insurance to Study Hall via two primary Coverage Forms: a Commercial General Liability ("CGL") Coverage Form and a Liquor Liability Coverage Form. *See Ex. A., Policy, Form CG 00 01 04 13 and Form CSGA 203 10 18, pp. 16-35 and pp. 54-58*.

38.     Provisions within the Policy, including these Coverage Forms and their related endorsements, preclude coverage to Study Hall, relative to the Loss Event, Underlying Complaint, and injuries discussed above.

39.     The Policy required Study Hall to notify Cincinnati "as soon as practicable of an 'occurrence' or offense which may result in a claim" and, in the event of a suit, Study Hall "must see to it that [Cincinnati] receive[s] written notice of the claim or 'suit' as soon

as practicable." *Id., Form CG 00 01 04 13, p. 29*.

40.     Additionally, the Policy requires Study Hall to "[i]mmediately send [Cincinnati] copies of any demands, notices, summons or legal papers received in connection with the claim or 'suit." *Id., p. 28*

41.     Study Hall did not notify Cincinnati as soon as practicable of the Loss Event, Underlying Complaint, or Action, and such lack of notification materially prejudiced Cincinnati.

42.     The Policy's CGL Coverage Form contains an exclusion entitled "Liquor Liability Exclusion," which precludes coverage for Bodily Injury, as defined by the Policy, for which "an insured may be held liable by reason of ... [c]ausing or contributing to the intoxication of any person," "furnishing of alcoholic beverages to a person ... under the influence of alcohol," or "[a]ny statute, ordinance or regulation relating to the sale, gift distribution or use of alcoholic beverages." *Id., Form CG 00 01 04 13, p. 20, as modified by Form CG 21 50 04 13, p. 46*.

43.     The Liquor Liability Exclusion applies even if allegations alleged against an insured relate to negligence in the "supervision, hiring, employment, training or monitoring of others" by the insured, if the Occurrence causing the Bodily Injury involves any of the foregoing. *Id.* The Exclusion also applies even if the insured is "in the business of ... selling, serving or furnishing of alcoholic beverages." *Id.*

44.     The Liquor Liability Exclusion in the Policy's CGL Coverage Form precludes coverage to Study Hall, relative to the insurance afforded by the Policy's CGL Coverage Form.

45.     The Policy's Liquor Liability Coverage Form affords certain insurance for

8

Bodily Injury resulting from the "selling, serving or furnishing of any alcoholic beverage." *Id., Form CSGA 203 10 18, p. 54*.

46.     The Liquor Liability Coverage Form contains an exclusion entitled "Assault or Battery," which precludes coverage if Bodily Injury is caused by or arises out of "[a]n actual or threatened assault or battery whether caused by or at the instigation or direction of any insured, their employees, patrons or any other person." *Id., p. 56*. This Exclusion applies if the assault or battery was "[t]he failure of any insured ... to prevent or suppress assault or battery;" "[t]he failure to provide an environment safe from assault or battery;" or the "negligent ... [e]mployment," "[s]upervision," "[t]raining," or "retention ... of a person for whom any insured is or was ever legally responsible..." *Id.*

47.     The Policy also contains an endorsement entitled "Exclusion – Assault or Battery With Limited Optional Coverage (Defense Within Limits)" (the "Assault or Battery Endorsement"). *Id., Form CSGA 346 09 19, pp. 67-68*.

48.     The Assault or Battery Endorsement modifies the Policy's Liquor Liability Coverage Form, including the aforementioned Assault or Battery Exclusion, to provide *limited* coverage for "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' ... arising out of an actual or threatened assault or battery..." *Id., p. 67*. Such coverage is limited to a $50,000.00 Occurrence limit, <u>inclusive of defenses costs and indemnity</u>.

49.     Because the alleged Bodily Injury arose out of, is related to, and/or was caused by the alleged Assault and Battery, any coverage that may exist under the Policy's Liquor Liability Coverage Form is limited to the aforementioned $50,000.00 limit.

9

## COUNT I: DECLARATORY JUDGMENT
### (No Coverage Due To Late Notice)

50.     Cincinnati incorporates the allegations of Paragraphs 1 through 49, above, as if fully set forth herein.

51.     The Policy requires that once a claim or suit is brought against an insured, the insured must notify Cincinnati "as soon as practicable" of that claim or suit, including any "demands, notices, summonses or legal papers received" in connection with the claim or suit. *See Ex. A, Policy, Form CG 00 01 04 13, p. 29*.

52.     Study Hall received service of the Underlying Complaint on January 30, 2024. Study Hall did not then notify Cincinnati of the Underlying Complaint or Action. Plaintiff's counsel notified Cincinnati of the Underlying Action on November 21, 2024. By that time, the Court had already entered a default against Study Hall and Cincinnati's interests were materially prejudiced. *See Ex. F, Entry of Default*.

53.     Study Hall materially breached its contractual duties when it failed to timely notify Cincinnati of the Underlying Action.

54.     Accordingly, no coverage exists under the Policy.

## COUNT II: DECLARATORY JUDGMENT-IN THE ALTERNATIVE
### (In the Alternative, Coverage Under the CGL Coverage Form is Precluded by the Liquor Liability Exclusion)

55.     Cincinnati incorporates the allegations of Paragraphs 1 through 54, above, as if fully set forth herein.

56.     Should this Court disagree that the notice to Cincinnati was timely, which Cincinnati disputes, no coverage exists under the CGL Coverage Form due to the Liquor Liability Exclusion.

57.     As stated above, the Liquor Liability Exclusion bars coverage for Bodily

Injury for which "an insured may be held liable by reason of … [c]ausing or contributing to the intoxication of any person," "furnishing of alcoholic beverages to a person ... under the influence of alcohol," or "[a]ny statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages." *See Ex. A, Policy, Form CG 00 01 04 13, p. 20, as modified by Form CG 21 50 04 13, p. 46*.

58.    The Exclusion applies even if allegations against the insured relate to negligence in the "supervision, hiring, employment, training or monitoring of others" if the Occurrence causing the Bodily Injury involves any of the foregoing. *Id*. The Exclusion also applies even if the insured is "in the business of ... selling, serving or furnishing of alcoholic beverages." *Id.*

59.    Study Hall is in the business of selling, serving, or furnishing alcoholic beverages. *See Ex. B., Underlying Compl., ¶¶ 8-9*. The Underlying Complaint alleges that Study Hall was negligent or grossly negligent in its altercation with Mr. Roberts, who became intoxicated after consuming alcoholic beverages at Study Hall, and that such alcoholic service caused or contributed to the Bodily Injury alleged. *Id., ¶¶ 9-11, 16, 21*.

60.    Accordingly, the Liquor Liability Exclusion applies, and as a result, the Policy's CGL Coverage Form does not cover the Claim.

### COUNT III: DECLARATORY JUDGMENT-IN THE ALTERNATIVE
### (In the Alternative, The Maximum Coverage Available Under the Liquor Liability Coverage Form is Limited to a $50,000 Eroding Limit)

61.    Cincinnati incorporates the allegations of Paragraphs 1 through 58, above, as if fully set forth herein.

62.    Should this Court rule that the notice of the Clain to Cincinnati was timely, which Cincinnati respectfully disputes, the maximum coverage available to Study Hall is

11

$50,000.00, subject to an eroding limit, per the terms of the Assault or Battery Endorsement to the Liquor Liability Coverage Form.

63.     The Assault or Battery Endorsement provides up to $50,000.00 of insurance coverage, inclusive of defense costs and indemnity, for "'bodily injury' arising out of an actual or threatened assault or battery, a failure to provide adequate security, or a failure to prevent or suppress an assault or battery." *See Ex. A, Policy, Form CSGA 346 09 19, p. 67.*

64.     In the Underlying Action, Claimant alleges that Mr. Roberts' Bodily Injury resulted from the Assault or Battery he incurred, after Study Hall's selling, serving, and/or furnishing of alcoholic beverages to Mr. Roberts. Claimant alleges that Study Hall, by and through its employees, breached its duty of care by "[i]nciting a physical altercation with [Mr. Roberts]; "resorting to physical violence ... by forcefully throwing [Mr. Roberts] down the stairs;" and "engaging in reckless physical conduct" with Mr. Roberts, among other things. *See Ex. B, Underlying Compl., ¶¶ 14, 16, 21*.

65.     Claimant further alleges in the Underlying Action that Mr. Roberts' Bodily Injury, which occurred after Study Hall sold, served, and/or furnished alcoholic beverages to Mr. Roberts, resulted from Study Hall's "failure to provide adequate training to employees;" "failure to have trained and sufficient security personnel on the premises;" and "failure to properly train its employees/bouncers/security personnel." *Id., ¶ 20*.

66.     Accordingly, per the terms of the aforementioned Endorsement, the Policy's Liquor Liability Coverage Form provides a maximum of $50,000.00 of coverage, inclusive of defenses costs and indemnity, for the alleged Bodily Injury Mr. Roberts purportedly sustained.

## **CONCLUSION**

WHEREFORE, for the foregoing reasons, Cincinnati respectfully requests that this Honorable Court issue a judicial declaration in its favor and against Defendants, that:

1.   Study Hall is in breach of the Policy via its delinquent notice and that Cincinnati has no duty to defend or indemnify Study Hall, relative to the Underlying Action;

2.   Alternatively, that the Liquor Liability Exclusion in the CGL Coverage Form precludes all defense and indemnification coverage to Study Hall, relative to the Policy's CGL Coverage Form and the Underlying Action, *and* that the Assault or Battery Endorsement to the Liquor Liability Coverage Form provides a maximum of $50,000.00 in coverage, inclusive of defense costs and indemnity, under the Policy's Liquor Liability Coverage Form, for the bodily injuries alleged in the Underlying Action;

3.   Cincinnati is entitled to an award of all reasonable costs and attorneys' fees incurred in prosecuting this action; and

4.   Cincinnati is entitled to an award of any and all additional relief that this Court deems just and proper

Respectfully submitted, this 1st day of July, 2026.

13

BUTLER WEIHMULLER KATZ CRAIG LLP

  /s/ T. Nicholas Goanos
T. Nicholas Goanos
SC Fed. Bar No. 11971
N. Khrystyne Rasmussen
SC Fed. Bar No. 13099
11525 N. Community House Rd., Ste. 300
Charlotte, North Carolina 28277
T:  704.543.2321
F:  704.543.2324
E:  tgoanos@butler.legal
     ksmith@butler.legal
*Attorneys for The Cincinnati Specialty Underwriters Insurance Company*

14